THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAM VanDEURSEN, <br><br> Plaintiff, <br><br> vs. <br><br> CAMBRIA ENTERPRISES INC., a Minnesota Corporation, and CAMBRIA FABSHOP - CHICAGO INC., a Minnesota corporation, <br><br> Defendants. | No. 08 CV 2416 <br> Judge Darrah <br> Mag. Judge Keys <br><br> (Removed from Circuit Court of Cook County, Illinois, Case No. 08CH 15281) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
SECOND PETITION FOR TEMPORARY RESTRAINING ORDER**

NOW COMES the plaintiff, by and through her attorneys, LAVELLE LAW GROUP LLC, and for her memorandum in support of her second petition for a temporary restraining order, states as follows:

**I. INTRODUCTION AND STANDARDS PERTAINING
TO TEMPORARY RESTRAINING ORDERS**

The instant case is one which was initially filed in the Circuit Court of Cook County, Illinois, and which defendants have removed to this Federal District Court. Plaintiff Pam VanDeursen has filed a petition for a temporary restraining order arising out of defendants' interference with her employment relationship with her new employer. (Plaintiff is a former employee of one or both defendants who was required to sign a purported post-employment noncompetition/confidentiality agreement when she first began working for defendants.) As will be discussed, under either Illinois or Minnesota law, which are generally the same in these matters, defendants should be restrained from interfering with plaintiff's new employment for the following reasons: a) the noncompetition/confidentiality agreement is not enforceable

1

because it must be interpreted to not apply to plaintiff's new employment and thus it is not being breached; and b) the noncompetition/confidentiality agreement is an unenforceable restraint of trade against public policy due to its overbreadth, and its failure to protect a legitimate employer business interest and to be ancillary to a valid employment contract. In making the arguments set forth below, plaintiff incorporates the factual statement, including plaintiffs' affidavits and other evidentiary material, such as threatening letters to plaintiff and her current employer, from her petition for temporary restraining order. The exhibits are attached to the petition as Exhibits A-F.

The purpose of the temporary restraining order is to preserve the status quo, to prevent irreparable harm until a hearing can be held on a request for a preliminary injunction. C. Wright & A. Miller, Federal Practice and Procedure, sec. 2951, at 498. A party seeking a temporary restraining order must show that there is a reasonable likelihood of success on the merits, that there is no adequate remedy of law, and that she will suffer irreparable harm if relief is denied. Aircraft Owners and Pilots Assoc. v. Hinson, 102 F.3d 1421, 1424-25 (7th Cir. 1996). Thereafter, the court will consider whether the harm the plaintiff will suffer if the TRO is denied outweigh the harm the non-moving party will suffer if the TRO is granted, and the court must account for the TRO's effect on the public interest. Anderson v. U.S.F. Logistics IMC), Inc., 274. F.3d 470, 474-75 (7th Cir. 2001). A sliding scale approach exists, such that the greater the movant's chance of success on the merits, the less she must show that the balance of hardships tips in her favor. Ty, Inc. v. Jones Group, Inc., 237 F.3d 891 (7th Cir. 2001).

## II. ARGUMENT

1. BY ITS VERY TERMS, THE AGREEMENT WITH WHICH DEFENDANTS SEEK TO DESTROY PLAINTIFF'S CURRENT EMPLOYMENT DOES NOT APPLY TO HER WORKING FOR HER CURRENT EMPLOYER SINCE THE CURRENT EMPLOYER WAS AN AFFILIATE EMPLOYER AS DESCRIBED IN THE NONCOMPETITION AND

CONFIDENTIALITY AGREEMENT, AND THUS THE AGREEMENT CANNOT LOGICALLY OR LEGALLY APPLY TO THE CURRENT EMPLOYER.

**Factual Background**

Plaintiff Pam VanDeursen is an Illinois resident and former employee of defendant Cambria Enterprises, Inc. (hereinafter generally "Cambria"). Cambria is a corporation with headquarters in Minnesota and is in the business of manufacturing quartz surfaces. Defendant Cambria FabShop-Chicago, Inc. ("Cambria Fabshop") is also a Minnesota corporation, on information and belief is a subsidiary of Cambria, and it has offices in Illinois, and is in the business of fabricating quartz surfaces. On January 1, 2006, Cambria entered into a purported noncompetition/confidentiality agreement with plaintiff. Plaintiff had no employment relationship with defendant(s) before signing the agreement, and defendant insisted that she sign the agreement in order to be hired. See Exhibit A, para. 1, and Exhibit B, para. 2, to Petition for a Temporary Restraining Order.

The agreement, attached as Exhibit A to the petition for temporary restraining order, stated that, as purported consideration for the agreement, plaintiff was to be an at-will employee and the agreement contained no other description of the job such as her job title, responsibilities, terms of compensation or benefits which plaintiff would enjoy during her employ with Cambria. The agreement itself required that plaintiff sign it before she could be hired. The agreement concerned the subject matter of post-employment noncompetition and the confidentiality of information or trade secrets which plaintiff might become exposed to at Cambria, and provided that it was entered into by Cambria, its subsidiaries and "any affiliate" of Cambria's as the employer on the one hand, and plaintiff on the other hand.

Plaintiff worked out of at the Cambria Fabshop, Waukegan, Illinois location, and her duties included meeting with and educating dealers and business partners of Cambria with regard

3

to the value and benefit of Cambria products. Her duties did not include sales of Cambria products. On or about the second week of March 2008, plaintiff prepared to take on new employment with Surface Solutions, Inc., (hereinafter "Surface Solutions"), an Illinois corporation engaged in the fabrication of countertops and located in St. Charles, Illinois. Surface Solutions had been a partner of Cambria's during plaintiff's employment with Cambria. (See e.g., Exhibit F of Petition for Temporary Restraining Order.) Surface Solutions is not a manufacturer of quartz countertops, but rather is engaged in fabricating and selling such items. Under its agreement with Cambria, Surface would sell Cambria product to the mutual benefit and profit of both companies; notwithstanding that Surface could also sell countertops manufactured by Cambria's competitors. See Exhibit C, para. 6, to Petition for Temporary Restraining Order.

On March 31, 2008, plaintiff began her employment with Surface. On April 4, 2008, a Cambria representative verbally informed Surface that it was terminating Surface's status as a business partner. Id. para. 11. The effect of this action on Cambria's part was to end Surface's affiliation with Cambria. Additionally, on April 10, 2008, Cambria wrote to both plaintiff and Surface, claiming that plaintiff was prohibited from working for Surface due to the terms of the restrictive covenant, and threatening to sue both plaintiff and Surface if plaintiff was solicited or hired by it. See Exhibits D and E to Petition for Temporary Restraining Order.

Plaintiff was hired by Surface to work upon Cambria products, and she understood that based upon the terms of the noncompetition/confidentiality agreement and based upon her discussions with Cambria and/or Cambria Fabshop personnel, working in such a capacity for Surface was not in violation of the agreement. See Exhibit B, para. 6, 7, and 8. Because of Cambria's relationship with Surface at the time plaintiff was hired and put on the payroll,

4

Surface was an "affiliate" of Cambria and thus, by the terms of the noncompete, was also an "employer" of plaintiff. See Introductory Clause to Exhibit A.

Cambria's actions have caused and forced Surface and plaintiff to not perform any work because any work plaintiff might do while in Surface's employ (now that she cannot promote Cambria products) could be a violation of Exhibit A. Plaintiff is losing pay, and her ability to earn a living is in jeopardy. On April 30, 2008, plaintiff's salary was cut in half since, as she was told by Surface Solutions president Gary Linze, Surface Solutions cannot afford to pay her full salary during this time when she is unable to perform her job duties of promoting Cambria products — a situation that was caused by Cambria's termination of Surface's business partnership as a CIA with Cambria. This drastic reduction in plaintiff's salary is causing her imminent and irreparable harm, for her livelihood is dependant upon her salary.

The restrictive covenant in this case cannot be interpreted to apply to (and thereby prohibit) plaintiff's employment with her current employer, Surface Solutions, Inc. By its very terms, the agreement purports to prohibit plaintiff from post-employment competition with Cambria after her employment with Cambria terminates; however, "employer" is set forth as "Cambria Enterprises, Inc., a Minnesota corporation ..., and its subsidiaries and any affiliate thereof (collectively 'Employer')." As the evidentiary material makes clear, the Surface Solutions and Cambria entities worked together, as contractual business partners, to sell and distribute Cambria product to their mutual benefit, and the evidence reveals that the companies worked quite closely to ensure a smooth and profitable working relationship. See Exhibits B and C.

Surface was a business partner "affiliate" of Cambria, as an affiliate status results from a partnership. It should be emphasized that the word "affiliate" has broad meaning, both in the law

5

and in general usage. Thus, affiliate is defined in Ballentine's Law Dictionary (Third Ed. At 45) as "[t]o join or to become connected with, as to affiliate with a lodge or club." Webster's New World Dictionary (Third College Edition at 22), in addition to defining affiliate as to "take in as a member or branch," defines affiliate as "to connect or associate (oneself with)." Indeed, even a non-party to a contract may be an affiliate of a party to the contract, so surely a business partner is included within the meaning of an affiliate, and it does not matter that Surface had not signed the noncompetition/confidentiality agreement. Courts have recognized and assumed affiliation between entities in a variety of situations, such as principal/agency (see e.g., <u>Ameritech Publishing of Illinois, Inc. v. Hadyeh</u>, 362 Ill. App. 3d 56. 839 N.E.2d 625 (2005)); and in the partnership context (see, e.g., <u>Dolan v. Cablevision Services Corp.</u>, 324 Ill. App. 3d 1047, 756 N.E.2d 855 (2001)). Because Surface, as a business partner and affiliate of Cambria is defined as the employer, it is impossible for plaintiff to be prohibited from post-Cambria-employment working with her same former affiliate employer. A restrictive covenant assumes prohibited post-employment with someone other than the employer, and not continued employment and/or future employment with the employer.

Cambria may argue that it did not intend for its business partners to be parties to its employees' or its subsidiaries' employees' noncompetition agreement. However, Surface precisely fits the definition of "affiliate," and plaintiff understood that she worked with Surface and understood she was not precluded from working for Surface upon her departure from Cambria. Moreover, Cambria's noncompetition/confidentiality agreement refers to its "subsidiaries," in addition to its affiliates. Its affiliates cannot then be its subsidiaries and can only then, be its business partners. At best, Cambria's noncompete agreement is ambiguous. However, Illinois and Minnesota law are in accord that an ambiguous document is construed

against the drafter.  See <u>Cherne Industrial, Inc. v. Grounds & Associates, Inc.</u>, 278 N.W.2d 81 (Minn. 1979) and <u>Travelers Insurance Co. v. Eljer Mfg., Inc.</u>, 197 Ill. 2d 278, 293, 757 N.E.2d 481 (2001).

For all the foregoing reasons, this court must temporarily restrain defendants from interfering with plaintiff's employment with Surface.

2. THE AGREEMENT, IF INTERPRETED TO APPLY TO PLAINTIFF'S CURRENT EMPLOYMENT WITH SURFACE, IS UNENFORCEABLE AS A PROHIBITED RESTRAINT OF TRADE, LACK OF CONSIDERATION, THE FAILURE TO PROTECT A LEGITIMATE BUSINESS INTEREST OF CAMBRIA, AND ITS UNREASONABLENESS AS TO TIME AND AREA.

Covenants not to compete are agreements in partial restraint of trade that historically have been looked upon with disfavor in both in Illinois and Minnesota.  <u>Peterson-Jorwic Group, Inc. v. Pecora</u>, 224 Ill. App. 3d 460, 462, 586 N.E.2d 676 (1991) and <u>Bennet v. Storz Broad Co.</u>, 270 Minn. 525, 533, 134 N.W.2d 892, 898 (1965).  However, where the restraint is for a just and honest purpose, for the protection of a legitimate interest of the party in whose favor it is imposed, reasonable as between the parties, and not injurious to the public, the restraint has been held valid.  <u>Bennet v. Storz Broad Co</u>; <u>Millard Maintenance Service Co. v. Bernero</u>, 207 Ill. App. 3d 736, 745, 566 N.E.2d 379 (1990) (legitimate business interest of the employer is necessary).

In the instant case, Cambria does not have a legitimate business interest in disallowing plaintiff from her current employment with Surface Solutions.  As detailed *supra*, the restrictive covenant Cambria seeks to enforce purports to disallow plaintiff from working for a Cambria affiliate, (or at least one at the time plaintiff began her employment), that is, from one of the employers who is a party to the restrictive covenant.  A legitimate business interest is found where 1) the employee acquired confidential information through her employment with the employer and later attempts to use it for her own gains, and to the detriment of the employer, or

2) because of the nature of the employer's business, its customer relationships are near permanent and the employee would not have had contact with the customer absent his relationship. A.J. Dralle, Inc. v. Air Technologies, Inc., 255 Ill. App. 3d 982, 991, 627 N.E.2d 690 (1994).

Under plaintiff's Cambria job duties, plaintiff did not deal with end-line consumers, and while it is true she may not have come into contact with Surface absent her employment with Cambria, Surface was a business partner with Cambria and an affiliate, not its customer. Rather, Surface fabricated Cambria products. (Cambria's customers, if considered to be consumers, are not near permanent, but like all consumers, will presumably shop for the best product at the lowest price which can be found.) Moreover, plaintiff was not and is not acting simply for her own gains, but was hired by Surface for the benefit of both Cambria and its business partner, Surface; there was and should be no detriment to Cambria. Cambria simply does not have a legitimate business interest in disallowing plaintiff from her current employment with Surface Solutions.

Additionally, the restrictive covenant lacks consideration. A restrictive covenant will not be enforced unless it is ancillary to a valid employment agreement. See Creative Entertainment, Inc. v. Lorenz, 265 Ill. App. 3d 343, 638 N.E.2d 217 (1994); see also Midwest Sports Marketing, Inc. v. Hillerich & Bradsby of Canada, Ltd., 552 N.W.2d 254, 265 (Minn. App. 1996). Where a defendant's employment is contingent upon signing a restrictive covenant, without more, which is supported by nothing other than its own promise not to compete in the context of at-will employment, the covenant not to compete lacks consideration and is invalid due to its failure to be ancillary to a valid employment contract. Here, Cambria sought to provide in its noncompetition/confidentiality agreement that the consideration therefore was the *offer* of future

at-will employment. Exhibit "A," at Recitals, par. F and par. 1. This fails to satisfy the ancillary contract requirement, and thus the contract may not be enforced due to the lack of consideration supporting it (e.g., to interpret the employment agreement as binding on plaintiff is to say she is bound whether or not she is hired pursuant to the offer).

Next, the contract is unenforceable due to its overbroad subject matter and territorial restrictions. It purports to prohibit plaintiff from being "involved in any activities" in competition with Cambria for a period of two years "anywhere in the United states and in those foreign countries in which the Employer operates ("the Territory"). Read literally, this would prohibit plaintiff from even purchasing quartz surfaces from a competitor as a consumer, and the "involved in any activities" prohibition is far too broad and unspecific to be enforced. Covenants not to compete will only be found valid if no broader than necessary to protect the employer, and only activities which threaten the employer's interest should be restricted. Cambridge Engineering, Inc. v. Mercury Partners, 378 Ill. App. 3d 437, 457-58, 879 N.E.2d 512 (2007); see also Medtronic, Inc. v. Gibbons, 684 F.2d 565 (8th Cir. Minn. 1982).

It is uncontested that plaintiff's working territory was merely some 18 counties in Illinois only, and the law will not uphold geographic area restrictions unless they are "necessary to protect the employer's interest." See Overholt Crop Ins. Serv. Co. v. Bredeson, 403 N.W.2d 698, 703 (Minn. App. 1989). Exhibit B, at par. 3. Finally, given the lack of technical expertise plaintiff acquired working for Cambria, her lack of access to confidential information and that she was not selling Cambria product, a two-year employment restriction is unreasonable. See e.g., Eutectic Welding Alloys Corp. v. West, 281 Minn. 13, 160 N.W 2d 566, 570 (1968) (lack of technical expertise).

### III. CONCLUSION

The restrictive covenant which Cambria seeks to use as a sword to sever plaintiff's current employment was never intended to apply to her working for Surface Solutions, a business partner and affiliate of Cambria's embodied into the non-compete/confidentiality agreement as an "employer" itself. This court must interpret the agreement as such, or, if not so interpreted, the agreement is ambiguous and this ambiguity must be resolved against the drafter of the agreement—Cambria. The restrictive covenant does not protect a valid business interest of Cambria's, but is being used to punish plaintiff and Surface Solutions. The agreement was never supported by valid consideration, and the agreement is overbroad with respect to its time, its geography, and in the post-employment activities of plaintiff which it purports to prohibit.

The last peaceable status quo was that plaintiff was working for Surface and free to do so since Surface was a business partner affiliate as a Cambria product fabricator and Surface was free to sell Cambria products. This status quo must be preserved during the pendency of the preliminary injunction proceedings.

                                                            Respectfully Submitted

                                                             s/ Michael E. Lavelle
                                                             Michael E. Lavelle

Lavelle Law Group, LLC
Michael E. Lavelle, #55311
Adam W. Lasker, #43334
218 N. Jefferson St., Suite 203
Chicago, IL 60661
(312) 559-0600

Of Counsel:
Kevin E. Bry, #18587
218 N. Jefferson St., Suite 203
Chicago, IL 60661
(312) 749-7400